UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAMIAN B.,[1]

                    Plaintiff,                                DECISION AND ORDER

-vs-

                                                             24-CV-6251-MAV

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

## INTRODUCTION

In April 2024, Damian B. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 9 (Plaintiff); ECF No. 11 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 9] is denied. The Commissioner's motion [ECF No. 11] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

## I. Plaintiff's Applications

Plaintiff filed his application for DIB in September 2021, alleging a disability onset date of January 17, 2020. Administrative Record ("AR"), 221,[2] ECF No. 5. He identified multiple mental conditions that he claimed limited his ability to work, including: anxiety, panic attacks, and depression. AR at 234. He did not list any physical impairments in his original application. *Id.* In November 2021, the Commissioner found that Plaintiff was "not disabled," and his claim for DIB was denied. AR at 78–98. Plaintiff requested a reconsideration of the initial determination, and in April 2022 was again found "not disabled." AR at 99–122.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his application at the initial level and on reconsideration, Plaintiff appeared with counsel via video conference on January 12, 2023 for a hearing before an Administrative Law Judge ("ALJ"). AR at 50. At the hearing, Plaintiff stated that he became unable to work on January 17, 2020 because he "was having really massive panic attacks when [he] was out driving" for FedEx. AR at 58. The panic attacks were associated with a bad accident he had in October 2018, in which his vehicle rolled over multiple times and he broke his leg and his finger. AR at 59. Plaintiff testified that even after he stopped working, he continued to experience panic attacks four times a week or more that usually lasted "about an hour and a half," and involved lightheadedness, shaking of his whole body, and irregular breathing. AR at 60–61. Besides the panic attacks, Plaintiff said he

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

experienced depression two to three times a week that made him neglect his personal hygiene and want to hide in his room and not communicate with anyone. AR at 63. He did not reference any specific physical impairments.

Plaintiff testified that, as a result of his impairments, he had difficulty with concentration and focus, with his memory, with interacting with other people, and with sleeping. AR at 64–65. He stated that he was "extremely tired and groggy" much of the time because he was not sleeping well. AR at 65.

The ALJ also heard testimony from Vocational Expert April Rosenblatt (the "VE"), who testified that a hypothetical claimant with a residual functional capacity[3] ("RFC") identical to that which the ALJ ultimately found Plaintiff to have would not be capable of Plaintiff's past jobs as a delivery driver or short order cook. AR at 68–69. However, the VE testified that Plaintiff would be capable of working as a housekeeper or a marker. AR at 70.

## III. The ALJ's Decision

On March 7, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 44.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[4] through June 30, 2023, and had not engaged in substantial gainful activity since his alleged onset date of January 17, 2020. AR at 35. Then, at step two of the

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

[4] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

Commissioner's "five-step, sequential evaluation process,"[5] the ALJ determined that Plaintiff had several severe impairments: hip arthritis, obesity, status-post fracture of right long finger, a left knee impairment, post-traumatic stress disorder (PTSD), depressive disorder, and anxiety disorder. AR at 35–36.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 36. In making this assessment, the ALJ considered Listing 1.18, abnormality of a major joint in any extremity, but found the requirements of the listing were not satisfied. AR at 36. Additionally, the ALJ performed the "special technique" outlined in 20 C.F.R. § 404.1520a to assess whether Plaintiff's mental impairments satisfied the criteria for a depressive disorder (Listing 12.04), an anxiety disorder (Listing 12.06), or a trauma-related disorder (Listing 12.15). AR at 36. However, the ALJ found that Plaintiff had no more than moderate limitations in any of the four areas

---

[5] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

of mental functioning identified in 20 C.F.R. § 404.1520a(c),[6] and therefore did not satisfy the "paragraph B" criteria of the listings.

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except for the following restrictions:

> [Plaintiff] can frequently kneel, crouch and crawl and can occasionally climb stairs and ramps, but cannot drive, climb ladders, ropes, or scaffolds or work at unprotected heights. He can frequently handle, finger, and feel with the right, dominant upper extremity. [Plaintiff] can perform simple tasks at a consistent, goal-oriented pace; can make simple decisions; and can tolerate occasional minor changes. He can engage in occasional interaction with supervisors and coworkers, but cannot tolerate interaction with the public and cannot work around crowds of people.

AR at 37.

At step four, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that Plaintiff was not capable of performing his past relevant work as a delivery truck driver or a short order cook. AR at 42. Nevertheless, the ALJ found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, namely, a housekeeper and a marker. AR at 43. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI payments. AR at 44.

On February 28, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of

---

[6] The four broad functional areas in which the ALJ rates the degree of a claimant's mental functional limitations under 20 C.F.R. § 404.1520a are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d

6

255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In arriving at her finding of Plaintiff's RFC, the ALJ in the present case evaluated several medical opinions and prior administrative medical findings. With respect to Plaintiff's mental and physical impairments, the ALJ evaluated the opinions of multiple consultative psychological examiners and non-examining state

psychological consultants.[7] AR at 41–42. Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency of each of these opinions, warranting remand. ECF No. 9-1 at 16–30.

## I. Legal Principles

Regulations effective for all claims filed after March 27, 2017 provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). *See also, e.g., Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (noting that under 20 C.F.R. § 404.1520c, the ALJ "owes no special deference to any particular medical opinion in the record"). Rather, the regulations direct that the ALJ will evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Of these factors, supportability and consistency are the most important. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (discussing 20 C.F.R. § 404.1520c(b)(2)). Therefore, while the ALJ need not explain in her decision how she considered all of the factors, she must explain how she "considered the supportability and consistency factors for a medical source's medical

---

[7] The ALJ also evaluated the opinion of Jensen Vosburg, P.A.-C, but that opinion is not at issue here.

opinions or prior administrative medical findings . . . . " 20 C.F.R. § 404.1520c(b)(2).
Supportability refers to how "the objective medical evidence and supporting
explanations presented by a medical source . . . support [the medical source's]
opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(1).
Consistency refers to how similar "a medical opinion(s) or prior administrative
medical finding(s) is with the evidence" in the record. 20 C.F.R. § 404.1520c(c)(2).

In conducting this evaluation, "[a]n ALJ is prohibited from 'playing doctor' in
the sense that an ALJ may not substitute h[er] own judgment for competent medical
opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL
2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-
00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Nevertheless, the
regulations make clear that the ALJ – and not the claimant's medical sources – is
responsible for making the determination or decision about whether the claimant is
disabled. 20 C.F.R. § 404.1520b(c)(3). Thus, it is up to the ALJ to weigh the conflicting
evidence in the record. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

## II. Opinions Regarding Plaintiff's Psychological Impairments

Plaintiff maintains that the ALJ erred in her evaluations of the medical
opinion evidence regarding his psychological impairments. He argues that the ALJ
erred by substituting her own lay interpretation of the record in place of the opinions
of consultative examiners Amanda Slowik Psy.D. and Ruby Phillips, Ph.D. with
respect to Plaintiff's ability to perform daily activities, "offensively" misconstruing
Plaintiff's gap in counseling, failing to identify the "negative clinical findings" that
supported no more than moderate limitations, and failing to account for the moderate

limitations in her RFC determination. ECF No. 9-1 at 19–26. Plaintiff further argues that the ALJ's rejection of Dr. Slowik's and Dr. Phillips' opinions cannot be justified by her acceptance of the findings of the state psychological consultants because "[c]ourts have found that it is error to credit non-examining, non-treating sources over consistent opinions" from examining sources. *Id.* at 22. Plaintiff's arguments are without merit.

### A. Dr. Slowik, Consultative Psychological Examiner

Amanda Slowik, Psy.D. examined Plaintiff on October 8, 2019. AR at 469. Dr. Slowik's mental status examination recorded that Plaintiff was cooperative with adequate social skills, was fairly well groomed, and had normal posture and motor behavior and appropriate eye contact. AR at 470. Plaintiff's speech was fluent, his expressive and receptive language skills were adequate, his thought processes were coherent and goal directed, he demonstrated the full range of affect, and he was oriented to person, time, and place. *Id.* His recent and remote memory skills were intact, and his intellectual functioning was within the mild range. AR at 471. At the same time, his mood was anxious, and his attention and concentration were mildly impaired. AR at 470. Dr. Slowik opined that Plaintiff was mildly limited in his ability to sustain concentration, and that his ability to sustain an ordinary routine and regulate emotions was moderately to markedly limited due to his anxiety. AR at 471.

The ALJ determined that Dr. Slowik's opinion was "generally persuasive" because it was supported by her examination findings and generally consistent with the other evidence of record, but found that Plaintiff's activities and negative clinical findings indicated that he had no more than moderate limitations. AR at 41.

### B. Dr. Phillips, Consultative Psychological Examiner

Ruby Phillips, Ph.D. examined Plaintiff on November 12, 2021. AR at 515. Like Dr. Slowik before her, Dr. Phillips also found Plaintiff to be cooperative with an adequate manner of relating, appropriately dressed, fluent, and oriented to person, place, and time. AR at 516. She observed that his expressive and receptive language was adequate, his thought processes coherent and goal directed, and that his attention and concentration – as well as his recent and remote memory skills – were intact. *Id.* She opined that due to his anxiety, Plaintiff's ability to sustain an ordinary routine and regular attendance at work would be moderately limited, and his ability to regulate emotions, control behavior, and maintain wellbeing would be markedly limited. AR at 517.

The ALJ determined that Dr. Phillips' opinion was "partially persuasive" because although it was generally supported by her examination findings, it was not entirely consistent with the totality of the record with respect to Plaintiff's adaptability, [8] because he had demonstrated an ability to live alone with no emergency room visits or hospitalizations. AR at 41–42.

### C. Dr. Ochoa and Dr. Fernandez, State Psychological Consultants

J. Ochoa, Psy.D. reviewed Plaintiff's medical records in November 2021, and found that Plaintiff was moderately limited in his ability to perform activities within a schedule and maintain regular attendance, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and respond

---

[8] Under 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E(4), the abilities to regulation emotions, control behavior, and maintain well-being in a work setting fall under the broad area of mental functioning entitled, "Adapt or manage oneself."

11

appropriately to changes in the work setting. AR at 93–95. He concluded that Plaintiff:

> [I]s able to concentrate on, understand, and remember simple and detailed work procedures . . . . can maintain adequate attention and concentration to complete work like procedures and can sustain a routine . . . . [and] can interact in an appropriate manner to meet work related needs. The [Plaintiff]'s ability to handle stress and pressure in the work place would be reduced but adequate to handle the stresses of routine work. [Plaintiff] can make work related decisions.

AR at 95. After reviewing Plaintiff's records in April 2022, P. Fernandez, Ph.D. affirmed Dr. Ochoa's assessment. AR at 119.

The ALJ found Dr. Ochoa's and Dr. Fernandez's findings to be persuasive, "as they were supported by explanations and were consistent with the totality of the record, including [Plaintiff]'s negative clinical findings, treatment history, and activities." AR at 42.

### D. Analysis

Plaintiff frames his appeal of the ALJ's decision in terms of legal error in applying the framework for the evaluation of medical opinion evidence set forth in 20 C.F.R. § 404.1520c. However, the Court's review of the ALJ's decision reveals that the ALJ expressly addressed both the supportability and the consistency factors for each of the opinions and prior administrative findings she evaluated. AR at 40–42. Plaintiff's arguments seem to boil down, then, to a disagreement with how the ALJ weighed the evidence in the record.

After a thorough review of the record, the Court finds that the ALJ did not commit legal error in her evaluations of Dr. Slowik's and Dr. Phillips' medical opinions, or of Dr. Ochoa's and Dr. Fernandez's prior administrative findings.

Further, the ALJ did not impose her own lay interpretation on the record, but rather weighed conflicting evidence and supported her findings with substantial evidence.

To begin with, the ALJ referenced substantial evidence supporting her decision not to adopt Dr. Slowik's and Dr. Phillips' opinions that Plaintiff was markedly limited in his capacity for adapting or managing himself. In applying the "special technique" for mental health impairments (AR at 36–37), the ALJ noted that: Plaintiff's function report indicated that he could take care of pets and help his mother (citing AR 240–60); his treating psychiatrist, Sampath Neerukonda, M.D., repeatedly found him well dressed and well groomed (citing AR 681–93; *see also* §12.00E(4) ("maintaining personal hygiene and attire appropriate to a work setting")); Dr. Phillips found Plaintiff adequately groomed with full range of affect, neutral mood, and fair insight and judgment (citing AR at 515–18); and the state psychological consultants who examined his records also found only moderate limitation (citing AR at 56, 109).

Moreover, in her RFC explanation, the ALJ conducted an extended review of the longitudinal record that noted multiple mental status examinations revealing an anxious mood but otherwise relatively normal findings:

> [A]s of September 2, 2021, [Plaintiff] had not seen a counselor in over six months [AR at 724] and exhibited a normal mood and affect [AR at 725]. In October 2021, [Plaintiff] had a flat affect, slow soft speech, and fears, but was well dressed and groomed, spoke clearly, had no apparent memory issues, maintained good eye contact, and had good insight and focused attention/concentration [AR at 681, 683]. In November 2021, [Plaintiff] reported no psychiatric hospitalizations, seeing a therapist since April 2021, and seeing a psychiatrist since November 2020 [AR at 515]. Upon consultative psychiatric evaluation, [Plaintiff] was cooperative and exhibited an adequate manner of relating, adequate grooming, normal motor behavior, appropriate eye contact, adequate

expressive and receptive language, coherent and goal directed thought processes, a full range and appropriate affect, a neutral mood, intact attention and concentration, intact memory skills, average intellectual functioning, and fair insight and judgment [AR at 516–18]. In December 2021, January 2022, and February 2022, [Plaintiff] was well dressed and groomed, spoke clearly with a slow soft tone, had no apparent memory issues, and maintained good eye contact [AR at 688–93]. On January 31, 2022, [Plaintiff] exhibited an anxious affect, but had a normal mood, judgment, speech, and behavior [AR at 597]. At that time, [Plaintiff] was encouraged to look for remote work [AR at 598]. In March 2022, he exhibited a normal mood, affect, and judgment [AR at 707, 710]. In May 2022, [Plaintiff] had a depressed mood and anxious affect, but had a cooperative attitude, coherent and logical speech, fair cognition, 3/3 memory, and good insight and judgment [AR at 675]. In June 2022, [Plaintiff] was described as cooperative [AR at 700] and exhibited a normal mood, affect, and judgment [AR at 701]. [Plaintiff]'s June 30, 2022 treatment note indicated [Plaintiff] "seem[ed] to be doing very well on [his] current regimen" and was "functioning very well" [AR at 677]. At that time, he had an anxious affect and mildly depressed mood, but had a cooperative attitude, coherent and logical speech, no loosening of associations or flight of ideas, no paranoia, no hallucinations, fair cognition, 3/3 memory, and good insight and judgment [AR at 677]. On August 11, 2022, he exhibited a normal mood and affect [AR at 697]. On August 25, 2022, [Plaintiff] had a depressed mood and anxious affect, but his other clinical findings were negative [AR at 679]. As of November 3, 2022, [Plaintiff] had a depressed mood and anxious affect, but had a cooperative attitude, coherent and logical speech, no loosening of associations or flight of ideas, no paranoia, no hallucinations, no suicidal ideation, fair cognition, 3/3 memory, and good insight and judgment [AR at 694]. His provider noted that [Plaintiff] seemed to be doing very well and "came to the appointment basically for the disability paperwork" [AR at 694].

AR at 39–40.

As is evident from the foregoing passage, the ALJ's RFC determination regarding Plaintiff's mental impairments was based on a fair reading of the evidence. For instance, the Court does not read the ALJ's reference to the six-month gap in Plaintiff's counseling to be "offensive," as Plaintiff contends. ECF No. 9-1 at 20. That is, the Court does not understand the ALJ to be weighing it against Plaintiff that he

did not pursue counseling for six months at the height of the pandemic. Instead, the ALJ seems to be remarking upon the fact that despite not seeing a counselor for an extended period, Plaintiff still exhibited a normal mood and affect. AR at 725.

Lastly, the Court does not agree with Plaintiff that the mental impairments acknowledged in the ALJ's decision are not reflected in her RFC determination. The ALJ found that Plaintiff's RFC for light work was restricted, in pertinent part, by limitations to performing only simple tasks at a consistent, goal-oriented pace; making only simple decisions; and tolerating only occasional minor changes. AR at 37. Under the relevant regulations, the area of "adapting or managing oneself," which is the broad area of mental functioning related to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting, includes "[r]esponding to demands; adapting to changes; . . . [and] setting realistic goals . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E(4). Thus, several of the limitations the ALJ included in her RFC are directly related to the limitations that Dr. Slowik and Dr. Phillips identified in their respective opinions.

In short, the Court does not agree that the ALJ improperly relied on her own lay interpretation of the evidence when partially discounting Dr. Slowik's and Dr. Phillips' opinions. Rather, the ALJ permissibly found those opinions to be less persuasive than those of Dr. Ochoa and Dr. Fernandez in the particular area of Plaintiff's capacity to adapt and manage himself because they were less well-supported by the record evidence. AR at 40–42. *See, e.g., Camille v. Colvin*, 612 F. App'x 25, 28 (2d Cir. 2016) (finding that the prior administrative findings of non-examining state agency consultants may outweigh even a treating physician's opinion

15

where they are more consistent with the record evidence). The ALJ's assessment of Dr. Slowik's and Dr. Phillips' medical opinions were supported by substantial evidence, and it is not the Court's role to reweigh the evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F. 3d 118, 122 (2d Cir. 2012) (the Court must "defer to the Commissioner's resolution of conflicting evidence.") (internal citation omitted).

## III. The ALJ's Evaluation of Plaintiff's Physical Impairments

Plaintiff argues that the ALJ made similar mistakes in her evaluation of the medical opinions regarding his physical impairments as with her evaluation of the psychological opinions. ECF No. 9-1 at 27–30. Plaintiff maintains that the ALJ substituted her own lay interpretation of the record and failed to properly evaluate whether those opinions were both supported by the record and consistent with one another because: Dr. Magurno's observations properly supported her opinion that Plaintiff had moderate limitations in right-sided tasks, Dr. Sharif-Najafi's opinion was consistent with Dr. Magurno's regarding Plaintiff's hand limitations, and the ALJ improperly characterized Plaintiff's activities of daily living to diminish the severity of Plaintiff's impairments. *Id.* The Court disagrees.

### A. Dr. Magurno, Consultative Medical Examiner

Consultative medical examiner Justine Marguno, M.D. first examined Plaintiff on October 8, 2019. AR at 474. Plaintiff told her that he broke his right middle finger and left femur in a vehicular accident, that the bone healed crooked in his finger and tended to hurt the more he moved it, and that he still had pain in his femur and some limitation of movement. AR at 474. Nevertheless, he reported he cooked and cleaned seven times a week, did laundry once a week, showered and dressed daily. AR at 475.

16

In her physical examination, Dr. Magurno noted that Plaintiff appeared to be in no acute distress, with a normal gait and stance, but also with a squat limited by knee pain. *Id.* With respect to her examination of Plaintiff's right long finger (i.e., right middle finger), she observed that Plaintiff was tender on the PIP joint, that motion at the PIP and DIP joints was limited, and that when he made a fist the finger sticks out.[9] AR at 476. Dr. Magurno also found limitations in Plaintiff's fine motor activity in that he had difficulty touching the right thumb to the tip of the third finger, experienced pain when gripping, and used the thumb or fourth finger when tying a bow. AR at 477. She gave Plaintiff the prognosis of "fair," and opined that he had marked limitations for squatting, and moderate limitations for pushing, pulling, lifting, carrying, and fine motor tasks on the right-side. *Id.*

Dr. Magurno examined Plaintiff again in November 2021. He reported many of the same activities of daily living, and again presented in no acute distress with a normal gait and stance. AR at 521. She noted that Plaintiff was limited in each of the three joints in his right middle finger, but had no joint tenderness. AR at 522. Dr. Magurno found that Plaintiff's hand and finger dexterity were intact, his grip strength was 5 out of 5, and he was able to touch the thumb of his right hand to his long finger without difficulty, though tying a bow was still somewhat clumsy. AR at

---

[9] Each finger has three phalanges (the distal, the middle, and the proximal) that connect to the metacarpal (palm) bone. Between each phalange is a "hinge joint" – commonly known as knuckles – that allows finger flexion towards the palm. The PIP joint is the "proximal interphalangeal joint" between the metacarpal bone and the proximal phalange at the base of the finger. The DIP joint is the "distal interphalangeal joint" between the middle phalange and the distal phalange towards the tip of the finger. *See* Picture of Finger Anatomy, EMEDICINEHEALTH, https://www.emedicinehealth.com/image-gallery/finger_anatomy_picture/images.htm (last accessed August 6, 2025).

523. She again gave Plaintiff the prognosis of "fair," and opined that he was still markedly limited for squatting, but his limitations in right-sided fine motor tasks were only mild. *Id.*

The ALJ determined that Dr. Magurno's opinions were "partially persuasive," because they were "generally supported" by her clinical findings. AR at 40–41. However, the ALJ noted that they "were not entirely consistent" with Plaintiff's activities, treatment history, and treatment notes documenting limited positive objective medical findings. AR at 41.

### B. The State Medical Consultants

J. Sharif-Najafi, M.D. reviewed Plaintiff's medical records in November 2021 and found that Plaintiff had the residual functional capacity for light work, but had exertional limitations pushing and pulling in his lower extremities due to his hip arthritis, and was limited to frequent handling on his right side and only occasional fingering. AR at 88–91. M. Perrotti, M.D. reviewed Plaintiff's medical records in April 2022 and made the following findings:

> [Plaintiff] is morbidly obese and deconditioned. Climbing ramps, stairs, ladders, ropes and scaffolds is therefore limited to occasionally. There are some subtle issues with grip and dexterity only identified in the record during CE examinations. There were no office visits, no office phone calls and no emergency room visits for any issues related to the claimant's hands, grip or dexterity in the past 12 months. Manipulative restriction is not supported by review the claimant's record. [Plaintiff] has full motor strength throughout the upper and lower extremities. [Plaintiff] is capable of lifting 50 pounds occasionally and 25 pounds frequently. [Plaintiff] has a normal gait. Stand/walk for about 6 hours in a typical 8 hour workday. There is no contraindication to sitting. Sit for more than 6 hours in a typical 8 hour workday.

AR at 114.

The ALJ found that Dr. Sharif-Najafi's opinion was "mostly persuasive," as it was supported by an explanation and was mostly consistent with the totality of the record. AR at 41. However, the ALJ found that the portion of Dr. Sharif-Najafi's opinion regarding occasional fingering with Plaintiff's right hand was inconsistent with claimant's reported activities – "e.g., smoking cigarettes, preparing food, and playing video games" – which showed that Plaintiff can perform frequent fingering with his right hand. *Id.* The ALJ determined that Dr. Perrotti's findings were "less persuasive" because although they were supported by an explanation, the findings were not entirely consistent with the medical record, which supported more exertional restrictions. AR at 41.

## C. Analysis

Plaintiff maintains that the ALJ substituted her own lay interpretation of the record and failed to properly evaluate whether the medical opinions regarding Plaintiff's physical impairments were both supported by the record and consistent with one another.

Before addressing the substance of this argument, the Court addresses two significant discrepancies in Plaintiff's briefing with respect to Plaintiff's physical impairments. First, Plaintiff's brief indicates that Plaintiff "broke his right hand" in the 2018 vehicular accident (ECF No. 9-1 at 26), while hospital records contemporaneous with the accident reference only a fracture to Plaintiff's "right middle finger" (AR at 305). In fact, a thorough review of the record reveals that the injury to Plaintiff's hand was for the most part limited to a fracture of his "right third finger" (AR at 406), also known as his "right long finger" (AR at 423) or "right middle

finger" (AR at 418). This distinction is relevant, as Plaintiff takes particular exception to the ALJ's evaluation of "Plaintiff's right hand limitations." ECF No. 9-1 at 27.

Second, Plaintiff appears to have the wrong dates associated with Dr. Magurno's opinions. He states that in October 2019, Dr. Magurno opined that Plaintiff had marked limitations for squatting, moderate limitations for bending, and mild limitations for – among other things – right-sided fine motor tasks, and lifting and carrying. *Id.* He further states that in November 2021, Dr. Magurno found that Plaintiff still had marked limitations for squatting, but that his limitations with respect to his right-sided motor tasks had progressed to moderate. *Id.*

In fact, however, Plaintiff has the dates reversed. Dr. Magurno opined that plaintiff had moderate limitations in his right sided motor tasks in October 2019 (several months prior to his alleged onset date), but only mild limitations in his right-sided fine motor tasks in November 2021. *Compare* AR at 477, *with* AR at 523. That is, instead of Plaintiff's right-sided fine motor skills getting progressively *worse*, it seems that Dr. Margurno found they got progressively *better*. This fact undermines Plaintiff's argument regarding the consistency between Dr. Magurno's medical opinion and the findings of state medical consultant Dr. Sharif-Najafi.

Plaintiff argues that "[h]ad the ALJ properly evaluated the supportability and consistency of the medical opinions provided by Dr. Magurno and Dr. [Sharif-]Najafi, the residual functional capacity formulated by the ALJ would include limitations for occasional handling and fingering." ECF No. 9-1 at 29. To begin with, the regulations do not require the ALJ to explicitly discuss the consistency of each medical opinion with specific other opinions in her evaluation of the medical opinions. *See, e.g., Serena*

*B. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06423 EAW, 2024 WL 3822808, at *5 (W.D.N.Y. Aug. 15, 2024) (citing, *inter alia, Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893-CV, 2024 WL 2174236, at *3 (2d Cir. May 15, 2024)).

But more to the point, the two opinions are not obviously consistent: Dr. Magurno found mild limitations in Plaintiff's right-sided fine motor skills in November 2021, while Dr. Sharif-Najafi believed fingering should be limited to "occasional."[10] *Compare* AR at 91, *with* AR at 523. A limitation to "occasional" performance of an activity is typically associated with a "marked" limitation in physical work-related functioning. *Gabrielle C. v. Comm'r of Soc. Sec.*, No. 21-CV-00567-LJV, 2023 WL 5200159, at *2 (W.D.N.Y. Aug. 14, 2023)) (collecting cases). Therefore, Dr. Sharif-Najafi seemed to find Plaintiff's impairment to be significantly more severe than did Dr. Magurno.

In any event, the Court observes that as with the arguments about the medical opinions regarding Plaintiff's mental impairments, Plaintiff challenges the ALJ's assessment of his physical impairments in terms of legal error in applying the framework for the evaluation of medical opinion evidence set forth in 20 C.F.R. § 404.1520c. And as with the ALJ's discussion of Plaintiff's mental impairments, the ALJ expressly addressed both the supportability and consistency factors for the medical opinions and prior administrative findings relevant to Plaintiff's physical impairments in her decision. AR at 40–41. Thus, again, Plaintiff's arguments seem to boil down to a disagreement with how the ALJ weighed the evidence in the record.

---

[10] "Occasionally" means occurring from very little up to one-third of the time. *Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 at *5 (S.S.A. 1983).

In that regard, the Court finds that in the present case the ALJ did not err in her evaluation of the opinion evidence, and supported her RFC determination with substantial evidence. The ALJ found that Plaintiff was limited to "frequent" handling and fingering with the right upper extremity. AR at 37. A limitation to "frequent"[11] performance of an activity in physical work-related functioning is consistent with a finding of "moderate" limitation. *Gabrielle C.*, 2023 WL 5200159, at *2 citing *Danielle S. v. Comm'r of Soc. Sec.*, 516 F. Supp. 3d 286, 292 (W.D.N.Y. 2021) (collecting cases)). In explaining this determination, the ALJ noted that Plaintiff returned to work as a delivery truck driver following his accident and injury. AR at 38; *see also* AR at 411 (noting in March 2019 that Plaintiff was "presently working"). She noted that Plaintiff had decreased range of motion, but also cited to Plaintiff's November 2021 examination with Dr. Magurno, in which she found his hand and finger dexterity were intact, he had 5/5 grip strength, and was able to touch his thumb to his middle/long finger without difficulty. AR at 522–23. The ALJ also pointed out that Plaintiff was able to smoke cigarettes, which requires frequent fingering. AR at 38 (citing multiple instances in the record). She later listed other activities that Plaintiff reported he was capable of (AR at 40), such as using resistance bands (AR at 488), cooking, cleaning, doing laundry, doing household chores, playing video games (AR 517, 521), and rearranging his furniture (AR at 688).

In sum, the ALJ did not commit legal error in her evaluation of medical opinions related to Plaintiff's physical impairments, and her RFC determination was

---

[11] "Frequent" means occurring from one-third to two-thirds of the time. SSR 83-10, 1983 WL 31251 at *6.

based on substantial evidence.

## CONCLUSION

The ALJ was not "playing doctor" in the present case. Rather, she weighed the conflicting evidence in the record and reasonably resolved the conflicts through the proper application of the relevant legal standards. Consequently, Plaintiff Damian B.'s motion for judgment on the pleadings [ECF No. 9] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:      August _3_, 2025
            Rochester, New York


                                        HON. MEREDITH A. VACCA
                                        United States District Judge